IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| 3PD, INC, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-13-2438 |
| U.S. TRANSPORT CORP., ET AL, | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

This is a diversity action brought by Plaintiff 3PD, Inc. ("3PD") against a former employee, Donald Rose ("Rose"), and its competitor U.S. Transport Corp. ("U.S. Transport") (collectively, "Defendants") for purported violations of the Maryland Uniform Trade Secrets Act, conversion, and tortious interference with prospective business relations. This Memorandum Opinion and accompanying Order address Defendants' motions for summary judgment. *See* ECF Nos. 81, 82. A hearing on these motions was held on July 1, 2015. For the reasons stated below, Defendants' motions for summary judgment are GRANTED. 3PD's amended complaint is therefore dismissed with prejudice.

I.   **BACKGROUND**

3PD is a full-service logistical support company, with a nationwide customer base comprised largely of major consumer product retailers. *See* ECF No. 65 at ¶ 1. Rose was a general manager for 3PD in charge of supervising and organizing all centralized customer dispatching and routing for 3PD's customer, Lowe's Home Centers ("Lowe's"). *See id.* at ¶ 4. On August 5, 2013, Rose notified 3PD that he was resigning, effective August 17, 2013, to take a

1

position with U.S. Transport, one of 3PD's competitors. *See id.* at ¶ 10. Both before and after Rose's resignation, but before his final day of work at 3PD, Rose forwarded to his personal e-mail account confidential 3PD information that 3PD contends was trade secret information. *See id.* at ¶ 11. That information included "price sheets, task sheets, budgets, forecasts, solicitation of employees, meeting notes, methods of scheduling, forecasts for the Lowe's accounts, preferred carriers and contact information." ECF No. 64-3 at ¶ 21. After this discovery, 3PD terminated Rose on August 13, 2013. *See* ECF No. 81-1 at 7.

On August 20, 2013, 3PD filed a complaint, together with a motion for temporary restraining order ("TRO"), against Defendants seeking to, among other things, prevent them from using the information taken by Rose. *See* ECF Nos. 1, 2. This Court granted the TRO on August 22, 2013 and then extended it on September 5, 2013. *See* ECF Nos. 8, 18. On September 10, 2013, the Court entered a Consent Order extending the injunctive relief in perpetuity. *See* ECF No. 22. Specifically, the Consent Order provides that Defendants:

> are enjoined, prohibited and restrained from communicating, utilizing, forwarding, reviewing (except with their own counsel) to any person other than [3PD], including to or with any independent contractors, all trade secrets, confidential information, or proprietary information of 3PD, Inc., including any and all spreadsheets, e-mails, attachment to any e-mails, documents, business methods, business practices (except as publicized on advertising or general public communications of 3PD), customer lists, customer contact names, addresses and phones including any information contained in or referenced in any of the exhibits to the Complaint herein;
>
> B) Defendants are enjoined, prohibited or restrained from soliciting or contacting any employee of [3PD] for purposes of seeking non-public information or based on any information provided by Defendant Rose;
>
> C) Defendants [U.S. Transport] and Rose, as well as all employees, officers, managers, or agents of [U.S. Transport], are enjoined, prohibited and restrained from modifying, destroying, or by

2

> inaction allowing the destruction or removal, of any record, document or communication, physical or electronic, including but not limited to phone records, electronic records, e-mails, attachments to any record, text messages, that relates to any allegations in the Complaint and are hereby directed to take reasonable efforts to preserve any such records document or communication, including any such records documents, or communications that may be found in the personal files, telephone records, or e-mail account of Rose or any employee, officer, manager, or agent of [U.S. Transport].

ECF No. 22.

As for U.S. Transport, it contends that it first became aware of Rose's alleged actions after it was served with 3PD's complaint on August 23, 2013. *See* ECF No. 81-2 at 2. While U.S. Transport had extended an offer of employment to Rose on or about July 31, 2013, he was not yet an employee of U.S. Transport at the time it received the complaint. *See id.* Shortly after reviewing the allegations made by 3PD against Rose, U.S. Transport verbally rescinded its offer of employment and later confirmed the same in writing to Rose on August 26, 2013. *See id.*; *see also* ECF No. 81-3 at 8-9. Ultimately, U.S. Transport determined that Rose did not forward any of the stolen information to it. *See* ECF No. 81-4. As such, in December 2013, U.S Transport re-extended an offer of employment to Rose to serve as its Northeast Regional Manager, which he accepted. *See* ECF No. 81-3 at 6, 10.

Following the entry of the Consent Order, the parties conducted lengthy discovery regarding 3PD's three count amended complaint, which included claims for misappropriation of trade secrets under the Maryland Uniform Trade Secrets Act, conversion, and tortious interference with prospective business relations. Defendants have filed motions for summary judgment. *See* ECF Nos. 81, 82. For the reasons discussed more fully below, the Court will GRANT Defendants' motions.


## II.     STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.    DISCUSSION

### A.     Misappropriate of Trade Secrets

3PD contends that Rose and U.S. Transport violated both the Maryland Uniform Trade Secrets Act ("MUTSA") and the Georgia Uniform Trade Secrets Act when Rose forwarded 3PD's trade secrets to his personal e-mail account without authorization. *See* ECF No. 73 at ¶¶ 18-29. At the outset, the Court is unclear as to the basis for applying Georgia law when the alleged misappropriation appears to have occurred in Maryland during Rose's employment with

3PD. Accordingly, the Court will construe 3PD's misappropriation claim as arising under the MUTSA. *See Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 231 (Md. 2000) (under Maryland conflict of law principles, "the place of the tort is considered to be the place of injury"). Regardless, the same analysis would apply under either Georgia or Maryland law as both states have adopted trade secret statutes which closely track the Uniform Trade Secrets Act. *Compare* Md. Com. Law II Code Ann. § 11-1201 *et seq*. *with* OCGA § 10-1-760 *et seq.* In addition, the Maryland legislature has dictated that the MUTSA "be applied and construed to effectuate its general purpose to make uniform the law with respect to" trade secrets among the states that have enacted the Uniform Trade Secrets Act. Md. Com. Law II Code Ann. § 11-1208.

The MTSUA provides statutory remedies for a business alleging misappropriation of a trade secret. *See LeJeune v. Coin Acceptors, Inc.,* 381 Md. 288, 301 (Md. 2004). "Misappropriation" means the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Md. Com. Law II Code Ann. § 11-1201(c). "Trade secret" means:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Md. Com. Law. II Code Ann. § 11-1201(e).

Assuming, without deciding, that the material taken by Rose was, in fact, trade secret information, 3PD's claim against Defendants would nevertheless fail because 3PD has not adequately demonstrated its damages under the MUTSA. The MUTSA permits a plaintiff to

recover monetary damages for misappropriation as measured by the "actual loss caused by misappropriation." Md. Com. Law II Code Ann. § 11-1203(b). In its Statement of Damages filed with the Court on October 3, 2013, 3PD indicated that its damages would include "lost profits and costs associated with . . . loss of customer accounts taken over by [U.S. Transport]." *See* ECF No. 38. Since filing that statement, however, 3PD has not in any way substantiated this claim. Indeed, in response to U.S. Transport's interrogatory requesting that 3PD "[s]eparately itemize and show how [3PD] calculate[s] any economic damages claimed" (*see* ECF No. 81-9 at 3), 3PD responded that it was "unaware at this time of the extent of economic damages incurred." *Id.* 3PD went on to state that the "action remains in the early stages of discovery and depositions have not been completed" and that it "reserves the right to supplement this response at the conclusion of discovery and up through trial." *Id.* Yet, despite the fact that discovery has been closed for fourteen months, 3PD has still never supplemented its interrogatories to provide Defendants with an updated Statement of Damages. In fact, 3PD's inability to identify its damages continued throughout discovery. Specifically, at the deposition of Wendy Mills ("Mills"), 3PD's Director of Client Solutions, Mills confirmed that she was not aware of any business 3PD had lost from Lowe's or, for that matter, any other of its other clients as a result of Defendants' conduct. *See* ECF No. 81-6 at 17-18. Nor was she aware of any economic loss that 3PD had sustained as a result of Defendants' conduct. *See id.* at 16-17. The Court also notes that throughout this proceeding 3PD has never retained an expert to evaluate the nature and/or extent of its damages, monetary or otherwise. Under these circumstances then, 3PD has failed to demonstrate a triable issue of fact as to whether it suffered any actual loss caused by Defendants' conduct.[1]

---

[1] The Court notes that while 3PD seeks attorney's fees as damages, the MUTSA permits the

In its opposition to Defendants' motion for summary judgment, 3PD effectively concedes that it has not demonstrated any actual loss caused by Defendants' conduct; instead, 3PD contends that the MUTSA does not require it "to prove 'actual damages' as an element" of its claim. This is true. The MUTSA also permits a trade secret plaintiff to recover damages for the "unjust enrichment caused by misappropriation" or in the amount of "a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." Md. Com. Law II Code Ann. § 11-1203(b), (c). But where, as here, the plaintiff in a trade secret misappropriation case has not even alleged, must less adduced any evidence, that the defendant was unjustly enriched by his or her misappropriation or that it should be entitled to a reasonable royalty, the plaintiff may not, in opposition to a motion for summary judgment, seek to amend its complaint by adding a new theory of damages. *See Zachair, Ltd. v. Driggs,* 965 F.Supp. 741, 748 n. 4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (unpublished table opinion); *see also Uzoukwu v. Prince George's Cmty. Coll. Bd. of Trustees*, No. 12-3228, 2013 WL 4442289, at *6 (D. Md. Aug.15, 2013). This is especially true here, where 3PD never raised this theory in its complaint, its amended complaint, or its Statement of Damages. Nor does it appear to have been raised in any of the

---

award of such fees when the defendant's misappropriation is "willful and malicious." Md. Com. Law II Code Ann. § 11-1204. Here, there is no evidence of willful or malicious misappropriation. Aside from Rose's initial unauthorized taking of 3PD's information, there is no evidence that Rose ever used this information for a commercially beneficial purpose. In fact, since August 2013 when the Court issued its TRO, Rose has not even been permitted to use the information contained in the forwarded e-mails. The simple fact that Rose took information that did not belong to him does not, in and of itself, amount to willful and malicious conduct. *See Am. Sales Corp. v. Adventure Travel, Inc.*, 862 F. Supp. 1476, 1481 (E.D. Va. Sept. 8, 1994). Furthermore, at the motions hearing on July 1, 2015, the Court amended the September 10, 2013 Consent Order to require Rose to permanently delete and destroy any and all copies of the materials he took from 3PD. On July 6, 2015, Rose confirmed in an affidavit submitted to the Court that he never printed, copied, or otherwise preserved the e-mails or their attachments and that he has since deleted them from his e-mail account. *See* ECF No. 105-1. The Court is therefore satisfied that 3PD faces no ongoing threat of future damages as a result of Rose's actions.

discovery materials that have been submitted to the Court, or the subject of expert discovery. The Court will therefore grant Defendants' motion for summary judgment as to 3PD's misappropriation claim.[2]

### B. Conversion

3PD also raises a claim of conversion against Rose. *See* ECF No. 73 at ¶¶ 10-17. Specifically, 3PD contends that Rose "intentionally exceeded his authorization to access stored electronic information and deliberately and willfully transmitted proprietary and confidential trade secret information to himself." *Id.* at ¶ 11. In doing so, 3PD maintains that Rose "exercised dominion and control over the proprietary information so as to seriously deprive 3PD of its property interest in the property software and information." *Id.* at ¶12.

Under Maryland law, "a 'conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 354 Md. 547 (Md. 1999). "A conversion claim under Maryland law 'requires not merely temporary interference with property rights, but the exercise of unauthorized dominion and control *to the complete exclusion of the rightful possessor*.'" *Thomas v. Artino*, 723 F. Supp. 2d 822, 834 (D. Md. 2010) (emphasis added) (quoting *Yost v. Early*, 87 Md. App. 364, 388 (Md. 1991)). "Thus if the other person (or entity, in this case) is not

---

[2] 3PD's claim against U.S. Transport also fails because there is simply no evidence in the record to suggest that U.S. Transport ever acquired the trade secret information from Rose or anyone else. In fact, the only evidence before the Court indicates that Rose never transmitted the information to U.S. Transport. *See* ECF No. 81-5 at ¶ 6. Although 3PD contends that this evidence is self-serving and does not entitle U.S. Transport to summary judgment, 3PD has failed to adduce any evidence to the contrary. Although "3PD is not comfortable accepting the word of the person who stole the information that he will steal no more[,]" the Court will not deny U.S. Transport's motion for summary judgment based solely on 3PD's discomfort with Rose's affidavit. Rather, it is 3PD's burden to adduce evidence sufficient to create a genuine issue of material fact as to whether Rose further disseminated the trade secret information. It has failed to meet this burden.

deprived of the property in question, there can be no conversion." *Alliance for Telecommunications Indus. Solutions, Inc. v. Hall*, No. 05-440, 2007 WL 3224589, at *12 (D. Md. Sept. 27, 2007).

Here, despite the fact that Rose forwarded company information to his personal e-mail account, 3PD remained (and currently remains) free to use and access all of the information, software, and data taken by Rose. Thus, because Rose's misappropriation of this information did not completely eliminate 3PD's ability to access or otherwise use this same information, 3PD's conversion claim fails. *See e.g.*, *Home Paramount Pest Control Cos. v. FMC Corp./Agric. Prods. Group*, 107 F.Supp.2d 684, 693 (D. Md. 2000) (granting summary judgment to the defendant on claim for conversion of sales data where plaintiff "has not produced any evidence to show that it was denied access" to the data at issue because conversion under Maryland law "requires the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor"); *Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, No. 05-2882 2006 WL 2572474, at *23 (D. Md. Sept. 5, 2006) (concluding that claim for conversion of customer list fails because, *inter alia*, "[p]laintiffs do not allege any facts showing that they were in any way excluded from using the customer list and customer information" even after the defendants obtained it). The Court will therefore grant Rose's motion for summary judgment as to 3PD's conversion claim.

    **C.**    **Tortious Interference with Prospective Business Relationship**

Finally, 3PD also contends that Defendants tortiously interfered with its prospective business relationship. *See* ECF No. 64-3 at ¶¶ 30-32. Specifically, 3PD contends that "[b]y working with and inducing [U.S. Transport] to hire 3PD employees while Defendant Rose was an employee of 3PD, and by Defendant Rose stealing [3PD's trade secrets] in order to transfer

the business methods, processes and systems, and acumen of 3PD to [U.S. Transport], Defendant Rose and [U.S. Transport] have tortuously [sic] interfered with the prospective contractual relations among 3PD and its customers, in order to improperly and wrongfully better compete with 3PD, knowing its internal pricing, incentives and business pricing." *Id.* at ¶ 31.

Under Maryland law, the elements required to establish tortious interference with contractual or business relations are as follows: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice) and (4) actual damage and loss resulting." *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons,* 358 F.Supp.2d 475, 481 (D.Md.2005). Here, much like its misappropriation claim, 3PD has failed to adduce a shred of evidence to demonstrate that it suffered any damages or harm from the alleged interference. Instead, 3PD contends that "a jury should decide what damages to award." ECF No. 85 at 10. Indeed, it is true that a jury would ultimately determine *what* damages to award; but, prior to that determination being made, 3PD has the burden of first demonstrating a genuine issue of material fact as to the *existence* of actual damages or loss caused by Defendants. It is has failed to carry this burden. The record is devoid of any evidence to suggest that it suffered any damages or harm from Defendants' alleged interference with 3PD's business relationship with Lowe's or any of its other customers. Accordingly, Defendants are entitled to summary judgment on this ground alone. *See e.g.*, *Nat'l Bd. for Certification in Occupational Therapy, Inc. v. Am. Occupational Therapy Ass'n*, 24 F. Supp. 2d 494, 506 (D. Md. 1998) (granting summary judgment for defendant where plaintiff "has not demonstrated the existence of any actual damages caused by [defendant's] alleged interference"); *Pandora Jewelry, LLC v. Chamilia, LLC*, Case No. 06-3041, 2008 WL 4533902

(D. Md. Sept. 30, 2008) (granting summary judgment against plaintiff's claim for tortious interference with prospective economic advantage because the plaintiff had failed to demonstrate the existence of any damages, like diverted sales or a loss of goodwill in the marketplace caused by Defendant's behavior); *Francis v. Power Plant Maint., Inc.*, 264 F. Supp. 2d 350, 356 (M.D.N.C. 2003) (granting summary judgment for defendant where "Plaintiff has presented no evidence of actual monetary damages").

## IV. CONCLUSION

For the reasons discussed above, the Court grants Defendants' motions for summary judgment in their entirety. 3PD's complaint is therefore dismissed with prejudice.

Dated: July 9, 2015

/S/
George J. Hazel
United States District Judge